## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| Department 13, Inc. | Case No. 23-10691-CTG |
| Debtor. | **Hearing Date: July 13, 2023 at 2:30 p.m. (ET)**<br>**Objection Deadline: July 6, 2023** |

## MOTION BY GENGHISCOMM HOLDINGS, LLC AND MR. STEVE SHATTIL FOR AN ORDER GRANTING RELIEF
## <u>FROM THE AUTOMATIC STAY AS TO THE TEXAS ACTION</u>

## I. Introduction

Pursuant to sections 105(a) and 362(d) of title 11 of the United States Bankruptcy Code, Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-1 of the Local Rules for the United States Bankruptcy Court District of Delaware (the "Local Rules"), GenghisComm Holdings, LLC and Mr. Steve Shattil seek entry of an order, substantially in the form attached hereto (the "Proposed Order") modifying and granting them relief from the automatic stay as to the "Texas Action" (defined below).

On June 2, 2023, the district court (the "Texas Court") in the Texas Action Texas issued an Order that "all proceedings in [the Texas Action] action are STAYED" and:

> "Plaintiff GenghisComm Holdings, LLC is directed to file within the next 30 days either (1) a motion to dismiss the claims in this action against D13 without prejudice (retaining the right to pursue such claims in the Bankruptcy Court), or (2) a motion in the Bankruptcy Court to lift the stay against D13 *for the limited purpose of pursuing the claim to judgment in this Court*."

Movants acknowledge that to the extent that any judgment is entered against the debtor in the Texas Action, it will merely be resolution of dispute or liquidation of a general unsecured claim against the debtor's bankruptcy estate.

In support of this Motion, the Movants submit the Declaration of Steve Shattil, in Support of the Motion (the "Shattil Declaration") attached as Exhibit A and respectfully state as follows:

## II. Jurisdiction and Venue

The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 157 and 1334, and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(G). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

The statutory bases for the relief requested in this Motion are sections 105(a) and 362(d) of the Bankruptcy Code, Bankruptcy Rule 4001, and Local Rule 4001-1. Pursuant to Local Rule 9013-1(f), the Movants consent to the entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III constitutional jurisdiction to enter such final order or judgment absent consent of the parties.

### III. Facts

1. On May 11, 2022, plaintiff and patent owner GenghisComm Holdings LLC ("Genghis") filed suit against Department 13, Inc. (for economy of reference, the debtor corporation, Department 13, Inc. may sometimes be referred to below as "D13") in the Eastern District of Texas, Case No. 2:22-cv-142. ("Texas Action").

2. No stockholder of Department 13, Inc. is a party to the Texas Action.

3. The patents that Department 13, Inc. listed on its Form 206A/B Schedule A/B part 10 in this case as Department 13, Inc.'s own patents are not involved in any way in the Texas action.

4. The litigation in the Texas Action is long-standing and well developed. For example, the Texas Action's public docket report on PACER shows 140 entries.

5. The Court in the Texas Action has conducted multiple lengthy in-person hearings.

6. The Texas Court is extremely familiar with the issues in the Texas Action. E.g., Ex. A.

7. The Texas Court has extensive knowledge of the facts and issues and has already made detailed findings.

8. Department 13, Inc. has had four lawyers from two different law firms represent it throughout the Texas Action.

9.      The essence of the Texas Action is that Genghis and Department 13, Inc. entered into multiple patent license agreements over many years but Department 13, Inc. never paid Genghis the minimum royalty debt explicitly set forth in those agreements.

10.     The patent license agreements in the Texas Action include:

a.      The March 2018 Patent License Agreement ("PLA"), Ex. B and
b.      The 2021 Termination of Patent Licenses ("TPA"), Ex. C.

11.     The PLA obligated Department 13, Inc. to pay Genghis millions in minimum stipulated royalties which remain unpaid.

12.     In a 2018 Annual Report prepared by the independent auditors (RSM Australia Partners) of Department 13 International Ltd (who at the time claimed to be Department 13, Inc.'s parent) and filed with the Australian Securities & Investment Commission, Department 13, Inc. acknowledged the minimum royalty payments due Genghis under the PLA, cutting and pasting the minimum royalty contract provisions of the PLA into its Annual Report.  *See* Ex. D.

13.     Ben McAlister was Department 13, Inc.'s client representative in the mediation in the Texas case.  Texas Action Dkt. No. 117.

14.     At a hearing in the Texas Action on March 10, 2023, Department 13, Inc.'s counsel represented to the Texas Court that Ben McAlister was the client representative in charge of Department 13, Inc.:

> THE COURT: Who is your contact now with Department 13?
> MR. CHRISTIAN: Our primary contact has been McAlister. He, I believe, is a board member and is also at the private equity firm that owns these entities.

15.     In a 2021 deposition in a different case, Mr. McAlister admitted to Department 13 Inc.'s royalty debt under the PLA and that D13 was in breach.  *See* Ex. E.

16.     At the 341 meeting in this bankruptcy, D13's bankruptcy counsel stated that Mr. McAlister represented only Department 13 Pty Limited, the 100% owner of Department 13, Inc. and a purported creditor of Department 13, Inc. (and an insider).

17.     In the Texas Action, Department 13, Inc.'s only fact witness and 30(b)(6) witness testified that Department 13, Inc. was obligated under the PLA to pay Genghis the minimum royalty payments.

18.     Genghis and Mr. Shattil believe that Department 13, Inc. never had any colorable defense to the payment obligations under the PLA.

19.     Genghis moved for entry of summary judgment on the PLA.  Texas Action Dkt. No. 126.

20.     The agreement that later terminated the PLA, the TPA, also obligated Department 13, Inc. to pay Genghis the same amount as the PLA in unpaid royalties, and was otherwise better for Department 13, Inc. than the PLA.

21.     Both the PLA and the TPA obligated Department 13, Inc. to pay Genghis interest on past due amounts at the rate of 1% per month, bringing the amount due as of the petition date to about $2.5 million.

22.     Department 13, Inc.'s main purported defense to the Texas Action was that its longtime President, CEO, and Director had no authority to sign the TPA on February 10, 2022 (the TPA was made effective as of November 1, 2021).  Department 13, Inc. contended throughout the Texas Action that only Lee Croft was Department 13, Inc.'s CEO and that only he had authority to sign any agreement terminating the patent licenses.  From the get-go, this defense was belied by its own multiple sworn public filings with the Secretary of State of

Delaware (filed under penalty of perjury) that as of February 27, 2022 Jonathan Hunter was Department 13, Inc.'s only officer and director. Texas Action Dkt. No. 80-1.

23.     Further, when Mr. Shattil approached Mr. Croft about a termination agreement in October 2021, Mr. Croft undisputedly responded that Genghis should deal only with Jonathan Hunter on a termination agreement:

"The agreement is with INC. Jonathan is the only officer of INC. Please refer to him."

24.     Despite Mr. Croft's own undisputed emails, beyond its lack of authority defense to the TPA, throughout the case, Department 13, Inc. has pursued a baseless theory that Mr. Shattil had engaged in a conspiracy with Mr. Hunter to defraud D13 by entering the TPA that Mr. Hunter signed.

25.     Further, as early as July 2022, Department 13, Inc. filed a Third-Party Complaint that purported to bring claims against Steve Shattil, Genghis's President, as an individual defendant. Texas Action at Dkt. No. 14.

26.     Department 13, Inc.'s purported claims against Mr. Shattil are part of the Texas Action and on the eve of the petition were set to be soon resolved.

27.     Department 13, Inc.'s Third Party Complaint against Steve Shattil contained *ad hominem* character attacks on Mr. Shattil and were aimed at harming his reputation, ability to work as a patent agent, and ability to participate in other business ventures.

28.     Department 13, Inc. also filed purported counterclaims against Genghis designed to harm its ability to use Genghis's own patents and related business interests.

29.     For example, Department 13, Inc.'s Second Amended counterclaims (Texas Action Dkt. No. 115), extends for 129 paragraphs and purported to allege the following counterclaims:

- Count 1: Fraud By Nondisclosure (Against Shattil)

- Count 2: Conspiracy To Defraud (Against Genghis and Shattil)
- Count 3: Breach Of Fiduciary Duty (Against Shattil As D13's Patent Agent)
- Count 4: Knowing Participation In Breach Of Fiduciary Duty (Against Genghis
- Count 5: Unfair Competition (Against Genghis and Shattil)
- Count 6: Unjust Enrichment (Against Genghis and Shattil)
- Count 7: Declaratory Judgment Pursuant To 28 U.S.C. 2201 (Against Genghis and Shattil - TPA and Shattil Releases)
- Count 8: Declaratory Judgment Pursuant to 28 U.S.C. 2201 (Against Genghis and Shattil - PLA)
- Count 9: Declaratory Judgment Pursuant to 28 U.S.C. 2201 (Against Genghis and Shattil - Lack of Consideration for the TPA and Shattil Releases)

30.     In these counterclaims for example, Department 13, Inc. alleged that Mr. Shattil had breached ethical duties to Department 13, Inc. because he was a patent agent (although the counterclaims were fundamentally flawed and not colorable).  The counterclaims also may incorrectly suggest that Shattil has ongoing obligations to Department 13, Inc.

31.     At the May 4, 2023 hearing in the Texas Action, the Texas Court expressed skepticism that Department 13, Inc.'s fraud claims had any merit.  Ex. A pp. 26-30.

32.     Discovery in the Texas Action was extensive and is closed.  Genghis does not seek to depose any other witnesses from D13 for the Texas Action.  Genghis also will not be relying on any expert testimony in the Texas Action.

33.     Department 13, Inc. made 12 document productions, produced over 750 documents and 4,500 pages.Department 13, Inc. also sent a document subpoena to Jonathan Hunter, who made 2 productions of 410 documents and over 19,000 pages.vGenghis and Shattil made 16 productions of at least 285 documents and 1,667 pages.In response to a subpoena, third party Francis Collins made a document production of 33 documents and 53 pages.

34.     Three depositions extending for about 20 hours were taken in the Texas Action.

35.     Lee Croft's deposition took place with Croft appearing by video from Australia on February 14, 2023.  The deposition extended from 10 am central US to 6:45 pm Central US.

Three sets of counsel from four law firms attended.  The out-of-pocket cost of the deposition alone were over $2,500 per side.

36.     Jonathan Hunter's deposition took place with Hunter appearing by video from the Middle East on March 22, 2023.  The deposition extended for nearly 7 hours. Three sets of counsel from four law firms (5 lawyers) attended. The out-of-pocket cost of the deposition alone were over $1,500 per side.

37.     Steve Shattil's deposition took place in Chicago on April 4, 2023.  Counsel from two law firms, and the witness, traveled to Chicago. The deposition was from 9 am to just after 6 pm.  Three lawyers from three law firms attended.  Costs were again in the thousands.

38.     Six motions to compel were filed and decided in the Texas Action.

39.     Scores, if not hundreds, of emails were sent as a part of the Texas Action.

40.     Other motions were filed, briefed, and decided in the Texas Action.

41.     Lawyers for Genghis and Mr. Shattil (from law firm Global IP Law Group LLC) spent hundreds of hours on the case and incurred hourly legal fees valued at over $1 million.

42.     Discovery in the Texas Action closed on April 13, 2023.

43.     A full day mediation in the Texas Action was conducted on May 16, 2023.

44.     The parties exchanged their trial witness lists on May 11 and May 18, 2023.

45.     The Texas Court had set the:

- The Final Pretrial Order due date for June 22, 2023
- The Final Pretrial Conference: June 29, 2023
- Trial date (jury selection):  July 17, 2023

46.     Despite the extensive and expensive discovery, Department 13, Inc. was never able to identify any basis for its claims or counterclaims.  Department 13, Inc. never articulated

any basis to say that the TPA harmed or damaged Department 13, Inc. Department 13, Inc. was unable to identify anything in the disputed TPA that is worse for it than the undisputed PLA.

47. Department 13, Inc. was unable to identify any basis for Department 13, Inc.'s claim that the TPA transferred or conveyed any patents from Genghis to Department 13, Inc. Department 13, Inc. was unable to identify even one such patent.

48. Department 13, Inc. was unable to identify any factual or legal basis for D13's claim to any offset.

49. Department 13, Inc. was never able to articulate any value to its purported counterclaims and there is no cognizable basis to attribute any value to any of them.

50. Department 13, Inc. was unable to identify any basis for Department 13, Inc.'s claim that the TPA, or any other agreement, took away any patent rights that Department 13, Inc. ever had.

51. Department 13, Inc.'s claims and counterclaims lacked any factual or legal basis.

52. Genghis and Mr. Shattil were required to write and serve multiple Rule 11 motions as a part of the Texas Action. They were not yet filed as of the Petition.

53. Genghis and/or Mr. Shattil filed six motions for summary judgment:

1. Summary Judgment That Lee Croft Was Not CEO of Department 13, Inc. After May 5, 2021 and Had No Authority to Act on Behalf of Department 13, Inc. After May 5, 2021
2. Summary Judgment On Counts III And IV of Genghis's Complaint Related To The Amended And Restated Patent License Agreement- March 12, 2018 ("PLA")
3. Summary judgment on D13's Third Party Claim 1 "Fraud By Nondisclosure" And Claim 2 "Conspiracy To Defraud"
4. Summary judgment on D13's Counterclaims 3 And 4 Related to Purported Breach Of Fiduciary Duty
5. Summary judgment on GenghisComm Holdings, LLC's Motion For Summary Judgment On D13's Purported Fraud Claims Because There Is No Evidence Of Injury Or Damages To D13 From The TPA
6. Summary Judgment that Jonathan Hunter Had Actual Authority to Enter the Termination of Patent License Agreement ("TPA") and the Release Agreements.

54.     Motions 1 and 2 were fully briefed and ready for a decision at the time of the Petition.

55.     Several deadlines in the Texas Action were set to occur the day after the petition date:

- On June 1, 2023, Department 13, Inc.'s response to the remaining four summary judgment motions 3, 4, 5 and 6 were due.

- On June 1, 2023, Department 13, Inc.'s pretrial disclosures, including its trial exhibit list and trial deposition designations were due. Genghis and Mr. Shattil's trial exhibit list had over 100 exhibits. Deposition designations were especially important in this case because 2 of the 3 "will call" trial witness were going to appear by video.

56.     Department 13, Inc. filed its Chapter 7 voluntary bankruptcy petition on May 31, 2023.

57.     There were no business events or business or financial developments on or around May 31, 2023 that prompted or required Department 13, Inc. to file its voluntary petition on that date.

58.     On May 31, 2023, Department 13, Inc. filed its Suggestion of bankruptcy in the Texas Action.

59.     On June 2, 2023, the Texas Court issued an Order:

- all proceedings in this [Texas] action are STAYED and
- "Plaintiff GenghisComm Holdings, LLC is directed to file within the next 30 days either (1) a motion to dismiss the claims in this action against D13 without prejudice (retaining the right to pursue such claims in the Bankruptcy Court), or (2) a motion in the Bankruptcy Court to lift the stay against D13 for the limited purpose of pursuing the claim to judgment in this Court."

60.     At the time of the bankruptcy petition, the Texas court was ready to rule on the pending summary judgment motions, which would have disposed of Department 13, Inc.'s purported counterclaims and would have entered judgment in Genghis's favor.

61.     In the event that Genghis and Mr. Shattil did not completely prevail on summary judgment, the parties were on the door-step of trial of the issues when D13 filed its petition.

62.     The debtor's Schedules of Assets and Liabilities and Statement of Financial Affairs, Dkt. No. 13, re-states positions that were disproven in the Texas Action, but as to which an Order of judgment was precluded by the Petition:

> The Debtor is currently a defendant, counterclaimant and third-party plaintiff, in the action currently pending in the United States District Court for the Eastern District of Texas as GenghisComm Holdings, LLC v. Department 13, Inc., Civil Action No.: 2:22-cv-00142 (RWS)(RSP) (the "Texas Action"). In the Texas Action, GenghisComm Holdings, LLC ("Genghis") has asserted various claims against the Debtor, and the Debtor has disputed those claims and the amount that Genghis claims is owed in the Texas Action. The Debtor also has live counterclaims that could act as an offset to the same and other claims against another third party. The Debtor has requested damages in an amount to be determined at trial. Thus, while the Debtor has listed the value of these counterclaims and third-party claims as "$0," they are unliquidated claims and their true value is presently unknown. The Debtor reserves all rights with respect to the Texas Action and the characterization of the Texas Action, and any related claims, in the Schedules and Statement.

> And

> Patents. The Debtor has asserted claims in the Texas Action concerning potential interests it may have in various Genghis patents: i) that may have been wrongfully filed in Genghis' name; ii) that may have been wrongfully assigned to Genghis; and/or iii) for which the Debtor may have joint interests in or other rights in, including with respect to interests in patents that were "quit claimed" in connection with a February 10, 2022 Termination of Patent Licenses Agreement, which is the subject of live fraud and other claims of the Debtor in the Texas Action.

## IV.     Argument

### A. Genghis and Mr. Shattil Seek an Order Clarifying that Under 362(a)(1), the Stay Only Applies Only to Actions *Against* the Debtor, Not D13's Counterclaims or Third-Party Claims

The plain language of Section 362(a)(1) indicates that the stay applies only to actions *against the debtor*. "The statute does not address actions (and counterclaims) brought by the debtor. *In re Porter*, 371 B.R. 739, 746 (Bankr. E.D. Pa. 2007); *Assoc. of St. Croix Condo. Owners v. St. Croix Hotel Corp.,* 682 F.2d 446, 448 (3d Cir. 1982). There is no basis to stay the Texas Action

as to D13's debtor-initiated counterclaims and D13's third party claims based on its bankruptcy petition. Movants seek an Order clarifying that the stay does not apply to D13's claims and counterclaims and allowing the Texas Court to proceed in resolving them.

**B. Genghis and Shattil Seek an Order that the Stay be Lifted as to Actions Against the Debtor under Section 362(d)(1) Because All Three Prongs of the Balancing Test Demonstrate that the Stay Should Be Lifted in the Texas Action for Cause**

Section 362(d)(1) of the Bankruptcy Code provides that:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest....

The Bankruptcy Code does not define "cause." Relief from stay for cause is a discretionary determination courts make on a case-by-case basis. This bankruptcy court has the power to modify or vacate the stay based on "the particular circumstances of the case and is to be guided by considerations that under the law make for the ascertainment of what is just to the claimants, the debtor, and the estate."

The automatic stay "is not meant to be absolute, and in appropriate instances relief may be granted." *In re SCO Grp., Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007). Relief from the stay may be granted "when necessary to permit litigation to be concluded in another forum, particularly if the nonbankruptcy suit involves multiple parties or is ready for trial." Lawrence P. King, *Collier on Bankruptcy* 362.07[3][a] (15th ed.2006). See *In re SCO Grp.*, 395 at 857 ("[R]elief from the stay may be granted 'when necessary to permit litigation to be concluded in another forum, particularly if the nonbankruptcy suit involves multiple parties or is ready for trial.'" (quoting Lawrence P. King, *Collier on Bankruptcy* § 362.07[3][a] (15th ed. 2006))

The legislative history to section 362(d)(1) emphasizes the section's applicability to proceedings in another tribunal. "It will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from any duties that may be handled elsewhere." H.R.Rep. No. 595, 95th Cong., 1st Sess., 341 (1977), U.S. Code Cong. & Admin.News 1978, pp. 5787, 6297. Most courts follow this logic and apply an equitable balancing test to determine if cause exists to lift the stay to allow pending litigation to proceed or continue in another forum.

This Court has developed a three-prong balancing test to determine whether to grant relief from the stay. *Izzarelli v. Rexene (In re Rexene Prods. Co.),* 141 B.R. 574, 576 (Bankr.D.Del.1992). Application of the three factors demonstrates that the stay should be lifted.

1. **Factor 1: Whether any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit;**

Because it filed under Chapter 7, D13 is not attempting a reorganization. D13 has no officers and apparently only one director, Matthew Ryan, who was purportedly appointed near the eve of the petition and was not involved in the Texas Action.

D13 had separate litigation counsel in the Texas Action (2 different law firms at the same time). D13 had more than a full and fair opportunity to litigate its defenses in the Texas Action. Beyond that, D13 filed extensive counterclaims and third-party claims and sought to inflict damage on both, including their reputations. D13 required extensive discovery from Genghis and Mr. Shattil, including by filing a motion seeking to depose their trial counsel and to obtain every entry on their privilege log, uniquely aggressive requests.

Both sides had already undertaken its extensive trial preparation prior to the petition date. In the Texas Action, D13 agreed that it had only one fact witness, Lee Croft, and he has already

given his deposition and it is recorded on video to be played at trial. Even D13 agrees that Mr. Croft is no longer with the debtor D13. For example, D13 took the deposition of Genghis's President, Mr. Steve Shattil, and the deposition of D13's own prior CEO, President, and Director Mr. Jonathan Hunter. That deposition was also recorded on video to be played at trial. Discovery is closed in the Texas Action. The debtor's sole representative in the bankruptcy, Mr. Ryan, is not expected to be a witness in the Texas Action because he is not on the witness lists.

When considering the realities of this bankruptcy case, balancing this factor becomes straightforward. According to the debtor's own disclosure schedules, the only estate beneficiaries of any listed dollar amount are only two general unsecured claimants: movant, Genghis, and debtor's 100% controlling and owing stockholder and an insider, Department 13 Pty Limited. By debtor's own disclosure schedules, there is already a plausible showing that the insider stockholder's general unsecured claim should be recharacterized as equity and/or equitably subordinated under Section 510. Having undertaken essentially all the work (and all of the expense and burden) there is no prejudice that would come to the estate or D13 from having the issues in the Texas Action decided.

### 2. Factor 2: Whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor; and

The stay presents substantial and unreasonable hardship to GenghisComm and Shattil; the hardship and considerably outweighs the hardship to D13, as to which there is none. Both sides have already spent time and resources to resolve the case at summary judgment and/or at trial.

Beyond that, D13's defenses, including allegations of conspiracy, fraud, breach of ethical duties, and more, continue to cause ongoing problems for Mr. Shattil and GenghisComm. D13's Third Party Complaint against Steve Shattil contained *ad hominem* character attacks on Mr. Shattil and were aimed at harming his reputation, ability to work as a patent agent, and ability to

participate in other business ventures. The harm to Mr. Shattil, a third party to the patent licenses, from not lifting the stay and allowing the Texas Court to resolve these purported defenses and claims is enormously burdensome.

D13 also filed purported counterclaims against GenghisComm designed to harm its ability to use Genghis's own patents, including in separate ongoing patent litigation, and related business interests. The harm to GenghisComm from not lifting the stay and allowing the Texas Court to resolve these purported claims is unreasonably burdensome.

The injustice of these burdens is multiplied by the fact that the Texas Action was filed solely to obtain judgment on D13's debt which is undisputedly written in black-and-white in two agreements that D13 signed and because D13's defenses lack any factual or legal basis but have already been allowed to proceed for a year and have been litigated at great expense.

If the stay is not lifted for the Texas Action, there is the risk of duplicative litigation. Genghis seeks only to liquidate or resolve any dispute about the amount of its claim against the debtor. If the Texas Action is not allowed to proceed, a full trial on the merits potentially would follow anyway in a claims dispute or estimation proceeding. "[O]ne of the primary purposes in granting relief from the stay to permit claim liquidation is to economize judicial resources." *In re Rexene*, citing *Peterson v. Cundy (In re Peterson)*, 116 B.R. 247, 250. If the stay is lifted, all indications are that the Texas Action will come to trial quickly, within a matter of days.

As in *Rexene*, where the stay was lifted, these findings apply: "The hardship to the Movants in denying relief is considerable, whereas the prejudice to the Debtor[] in denying relief, as discussed in the first prong, is very slight, if any."

### 3. Factor 3: The probability of the creditor prevailing on the merits.

There was never any factual or legal basis for D13's defenses in the Texas Action. There was never a colorable basis to defend against the PLA and its payment obligations, which

survived any termination.  As to the TPA, there was never any basis under Delaware corporate law to say that Lee Croft was the CEO of Department 13, Inc. (e.g., there was never any election by Department 13, Inc.'s directors as the Bylaws required).  Even if he was ever CEO, Lee Croft explicitly resigned from all offices at Department 13, Inc. on May 5, 2021, before the TPA was signed.   Less than three weeks after the TPA was signed, Department 13, Inc. told the Secretary of State of Delaware under penalty of perjury that Jonathan Hunter was the only officer and director of Department 13, Inc.  Even if Lee Croft had been the officer, when Shattil approached Croft about a termination agreement in October 2021, Mr. Croft undisputedly responded: "The agreement is with INC.  Jonathan is the only officer of INC.  Please refer to him."

In response to Genghis's first two summary judgment motions, D13 identified no facts of law that could preclude the Texas Court from entering judgment in Genghis's favor.

Despite the extensive and expensive discovery, D13 was never able to identify any basis for its claims or counterclaims. The counterclaims have no value and D13 was never able to articulate or identify any value. D13 never articulated any basis to say that the TPA harmed or damaged D13. D13 was unable to identify anything in the TPA that is worse for D13 than the PLA.  D13 was unable to identify any basis for D13's claim that the TPA transferred or conveyed any patents from Genghis to D13. D13 was unable to identify even one such patent.

D13 was unable to identify any factual or legal basis for D13's claim to any offset. D13 was unable to identify any basis for D13's claim that the TPA, or any other agreement, took away any patent rights that D13 ever had.  Because D13's claims and counterclaims lacked any factual or legal basis, Genghis and Mr. Shattil were required to write and serve multiple Rule 11 motions as a part of the Texas Action.  They were not yet filed as of the Petition. As of May 31, Genghis was just days away from either a win at summary judgment or a win at jury trial.

### C. The 12 Prongs of the 2nd Circuit Test Also Demonstrate that the Stay Should Be Lifted in the Texas Action for Cause

Delaware Bankruptcy Courts also sometimes use additional factors in determining whether to lift the stay. See, e.g. *In re SCO Grp., Inc.*, 395 B.R. 852, 857 (Bankr. D. Del. 2007) citing *In re Sonnax Indus., Inc. v. Tri Component Prods. Corp.*, 907 F.2d 1280, 1287 (2d Cir.1990), which cites *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984). These factors also demonstrate that the Texas Action should proceed.

### 1. whether relief would result in a partial or complete resolution of the issues;

Allowing the Texas Action to proceed would completely resolve the issues in that case. This bankruptcy court cannot provide resolution on all of those issues, including, for example, those that involve Steve Shattil and his role as patent agent for D13.

### 2. lack of any connection with or interference with the bankruptcy case.

The Texas Action would not interfere with the bankruptcy case. It appears that there will only be three purported creditors participating in the bankruptcy: (1) Genghis; (2) XiDrone Systems, Inc., another patent licensor that D13 apparently never paid, which seeks its rights to audit D13's contracts with third parties to determine if there are any royalties due; and (3) Department 13 Pty Limited, debtor's 100% controlling and owing stockholder and an insider. The issues to be determined by the Texas Action (as described above) will not interfere with any issues to be determined in this bankruptcy case, such as any actions by the trustee or party in interest to recover preferences, fraudulent transfers, recharacterizing and/or equitably subordinating the general unsecured claim of the only other listed creditor of any amount, namely debtor's 100% controlling and owing stockholder and insider, or any other disputes regarding any other creditor claims. The debtor's sole representative in the bankruptcy, Mr. Ryan, is not expected to be a witness in the Texas Action. Allowing the Texas Action to proceed

will merely be allow resolution of Movant's claims to proceed without interference with other creditors or the estate property. Entry of judgment in the Texas Action will assist this court.

The patents that Department 13, Inc. listed on its Form 206A/B Schedule A/B part 10 in this case as D13's own patents are not involved in any way in the Texas Action.

### 3. whether the other proceeding involves the debtor as a fiduciary

This factor is not applicable. Debtor's debts are not dischargeable under section 727.

### 4. whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

The Texas Action is fundamentally a case about patent licenses and patent issues. Although not formally a specialized court, the Court in the Eastern District of Texas has more experience in patent matters than any other district Court in the country.[1] In this case, the Texas Court also has specialized knowledge of the facts and issues in the Texas Action from the extensive work the Texas Court has already undertaken. The Eastern District of Texas is also known for its short time to trial and not moving or extending its trial dates.

### 5. whether the debtor's insurer has assumed full responsibility for defending it;

Movants are without knowledge on this issue, but it appears that Department 13, Inc.'s 100% owner, Department 13 Pty Limited, has paid for all of Department 13, Inc.'s attorneys' fees and expenses in the Texas Action so far.

### 6. whether the action primarily involves third parties;

The action involves third party Steve Shattil, who D13 brought in through its defenses, counterclaims, and third-party claims. Leaving the claim against him unresolved would be a substantial injustice.

---

[1] Real Reasons the Eastern District of Texas Draws Patent Cases - Beyond Lore and Anecdote (smu.edu); www.patentprogress.org/2020/09 (The Texas Court handled "one out of every four patent cases in the entire United States").

**7. whether litigation in another forum would prejudice the interests of other creditors;**

The Texas Action would in no way prejudice the interests of other creditors. Genghis is already a listed creditor and resolution of the Texas Action would avoid costly and lengthy claims dispute or estimation litigation in the bankruptcy court. The resolution or liquidation of claims is a necessary step in bringing the bankruptcy case conclusion. Because the Texas Action has proceeded through very substantial and advanced adjudication, the most expeditions way to resolve or liquidate movants' claim is to allow it to quickly proceed to conclusion in Texas.

**8. whether the judgment claim arising from the other action is subject to equitable subordination;**

There is no basis for equitably subordinating any judgment from the Texas Action under § 510(c). In any event, D13 cannot demonstrate any alleged harm to it from Genghis obtaining judgment on D13's debts under the license agreements (the subjects of the Texas Action).

**9. whether the moving party's success in the other proceeding would result in a judicial lien avoidable by the debtor;**

Movants acknowledge that to the extent that any judgment is entered against the debtor in the Texas Action, it will merely be resolution of dispute or liquidation of a general unsecured claim against the debtor's bankruptcy estate.

**10. the interests of judicial economy and the expeditious and economical resolution of litigation;**

In *SCO*, the Court noted the "importance" of the "specialized knowledge that the District Court has developed in presiding over the Lawsuit." The Court also noted the "interests of judicial economy and the expeditious and economical resolution of litigation and, as stated earlier, the fact that the parties are ready for trial." The Court explained:

> It is undeniable that the Lawsuit involves many highly technical issues that the District Court has already addressed and mastered. Debtors concede that it is unreasonable to expect this Court to spend a significant amount of time learning and resolving the

Liability Issues when the District Court already has the knowledge required to adjudicate the Liability Issues. Moreover, to do so would be economically inefficient and unnecessarily time consuming

*In re SCO Grp., Inc.*, 395 B.R. at 852, 859–60 (Bankr. D. Del. 2007). Granting relief would promote the most efficient administration of the estate.

**11.  whether the parties are ready for trial in the other proceeding**;

D13 waited until about 45 days before trial to file its Petition. The parties were ready for trial. Lawyers for Genghis and Mr. Shattil (from law firm Global IP Law Group LLC) spent many hundreds of hours on the case and incurred hourly legal fees valued over $1 million. 140 filings had been made. Discovery had closed.   The parties exchanged their trial witness lists. Genghis and Mr. Shattil had provided its trial exhibit list and deposition designations.  The Final Pretrial Order and Final Pretrial Conference were just days away. Summary judgment rulings were about to issue and trial was about to begin on any remaining issue.

**12. impact of the stay on the parties and the balance of the harms.**

As discussed above, the stay presents substantial and unreasonable hardship to Mr. Shattil. D13's Third Party Complaint against Steve Shattil contained *ad hominem* character attacks on Mr. Shattil and were aimed at harming his reputation, ability to work as a patent agent, and ability to participate in other business ventures.  The harm to Mr. Shattil, a third party, from not lifting the stay and allowing the Texas Court to resolve these purported defenses and claims is enormously burdensome.  D13 also filed purported counterclaims against Genghis designed to harm its ability to use Genghis's own patents, including in separate ongoing patent litigation.

 There is no hardship to D13 from allowing the Texas Action to be completed.  Both sides have already spent large amounts of time and resources in preparation to resolve the case at summary judgment and to resolve the case at trial.

The injustice of these burdens is multiplied by the fact that the Texas Action was filed solely

to achieve judgment on D13's debt which is undisputedly written in black-and-white in two agreements that D13 signed; D13's defenses always lacked basis but proceeded for a year and have been discovered and litigated at great expense. The Texas Action should end in resolution.

## V. Burden of Proof

Section 362(g) provides that: "(g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section . . . (2) the party opposing such relief has the burden of proof on all other issues." The debtor's equity in property is not at issue in this motion. To the extent there is any prima facie burden on movants that they are entitled to relief from the stay, it has been met for the reasons set forth above. In any event, "[T]he burden to resist lifting of the stay rests entirely with the Debtor . . . The statute, by its burden shifting, seems almost . . . to ask, 'why shouldn't the stay be lifted?' . . . It is not [Movants'] burden to show that the Debtor[] would not be harmed by stay relief." *In re Abeinsa Holding, Inc.*, 2016 WL 5867039, at *3 (Bankr. D. Del. Oct. 6, 2016).

## VI. Waiver Of Stay Pursuant to Federal Rule of Bankruptcy Procedure 4001(A)(3)

Orders granting relief from the stay are themselves stayed for fourteen (14) days unless the Court orders otherwise. Fed. R. Bankr. P. 4001(a)(3). Movants respectfully submit that the rationale above for granting relief from the stay also supports waiver of the 14 stay pursuant to Rule 4001(a)(3) to enable Movants to immediately exercise their rights in the Texas Action.

## VII. Conclusion and Relief Requested

Movants respectfully request entry of the Proposed Order (i) clarifying that under 362(a)(1), the stay only applies only to actions *against* the debtor, not D13's counterclaims or third party claims and (ii) modifying the automatic stay to grant relief from the stay so that the Texas Action can proceed to judgment, (iii) and a waiver of the fourteen (14) day stay pursuant to Federal Rule of Bankruptcy Procedure 4001(a)(3).

Dated: June 29, 2023                 Respectfully submitted,

<u>/s/ *Alison Aubry Richards*</u>
Alison Aubry Richards
IL Bar # 6285669
Global IP Law Group, LLC
55 West Monroe Street, Suite 3400
Chicago, IL 60603
Telephone: (312) 241-1500
Email: arichards@giplg.com

*Counsel for GenghisComm Holdings, LLC*