# IN THE UNITED STATES BANKRUPTCY COURT
# OF THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| Department 13, Inc., | ) | Case No. 23-10691 (CTG) |
| | ) | |
| Debtor. | ) | Hearing Date: February 22, 2024 at 2:00 p.m. |
| | ) | Objections Due: February 15, 2024 at 4:00 p.m. |

**Motion By Genghiscomm Holdings, LLC and Mr. Steve Shattil For
Order Clarifying This Court's Order Lifting The Stay In The Texas Action
<u>Consistent With The Texas Court's Instructions at the January 9, 2024 Hearing In Texas</u>**

### I. Introduction and Relief Requested

On November 28, 2023, this Court entered an agreed order (the "Lift Order"), lifting the automatic stay with respect to prepetition non-bankruptcy case that was pending against debtor Department 13, Inc. ("D13") in the district court (the "Texas Court") in the Eastern District of Texas (the "Texas Action"). Dkt. No. 66. This Court retained jurisdiction to hear and determine all matters arising from the implementation of the Lift Order. Id.

After this Court lifted the stay, the Texas Court conducted a hearing on January 9, 2024 at which the Texas Court instructed GenghisComm to seek a further order from this Court that clarifies for the Texas Court the scope of the Lift Order. Ex. A.

The debtor, D13, filed bankruptcy on the eve of trial in the Texas Action. D13 filed the petition for the purpose of staying the Texas Action by GenghisComm. GenghisComm is the only non-insider to file a proof of claim in this bankruptcy. D13's only other creditor is its sole stockholder, an insider, and the stockholder's claim on its face does not appear to be a legitimate debt of D13. D13 filed the bankruptcy petition with the purpose of delaying and frustrating resolution of the Texas Action by its only non-insider creditor. As discussed at length in the last hearing before this Court, GenghisComm and Mr. Shattil seek to have D13's counterclaims and third party claims resolved in the Texas Action with preclusive effect such that there is meaningful resolution.

1

The Texas Action started in May 2022 as a simple effort to collect minimum payment on multiple signed patent license agreements. Through the end of 2021, the original dollar amount of the debt in the Texas Action, before interest, was $1.95 million. In the bankruptcy case, the Debtor produced information stating that the debtor's counsel was paid at least $1.3M for its work on the Texas Action and GenghisComm expended similarly large amounts on its side. The Texas Action contains both:

- Claims *by* GenghisComm against D13 for the debt under the agreement(s)
- Counterclaims *against* GenghisComm and 3rd party claims against Mr. Steve Shattil

When previously before this Bankruptcy Court on GenghisComm's motion to lift the stay, this Court indicated that in the interest of efficiency that this dispute should be decided in one Court. At the last hearing here, this bankruptcy court heard testimony from Mr. Shattil about the undisputed damage that D13's the ongoing counterclaims and 3rd party claims have caused and continue to cause to Mr. Shattil. Although GenghisComm sent the trustee the relevant materials in July 2023, on October 5, 2023, the trustee asked this this bankruptcy court to give the trustee more time to assess the Texas Action, and this Court granted it about 50 more days. The trustee then agreed to lift the stay and this Court entered the agreed order lifting the stay.

However, since then, the trustee has refused to participate in the Texas Action or abandon the counterclaims and third party claims. Given the years and millions of dollars already dedicated to the Texas Action, GenghisComm and Mr. Shattil do not want a default judgment in the Texas Action that the trustee can argue has no preclusive effect here. The trustee has already filed an Adversary Proceeding. See Dkt. No. Ch- 23-50591. That new case has substantial (if not complete) factual and legal overlap with the issues in the Texas Case, for which so much time and money has already been spent on fact discovery and summary judgment briefing. Given that the stay has been lifted in Texas, GenghisComm and Mr. Shattil seek a complete and final adjudication there on the merits with preclusive effect and seek to avoid relitigating the same

2

issues in the Adversary Proceeding.

Consistent with the Texas Court's instructions at the January 9, 2024 hearing and this Court's jurisdiction over the Lift Order, GenghisComm and Mr. Shattil seek entry of an Order from this Court, substantially in the form attached hereto (the "Proposed Order"), clarifying the Lift Order that:

***"Debtor's Claims": D13's debtor-initiated counterclaims and D13's third party claims***

- D13's debtor-initiated counterclaims and D13's third party claims in the Texas Action (the "Debtor's Claims") are not subject to the automatic stay of Section 362(a) or any other stay of this Court and may proceed to judgment on the merits;

- The Debtor's Claims are the property of the estate pursuant to § 541;

- The trustee, George L. Miller, is the transferee of D13's interest in the Debtor's Claims pursuant to Section 541 and has the exclusive right to represent the estate's interest in the Debtor's Claims pursuant to § 323;

- The trustee is substituted as the real party in interest with respect to the Debtor's Claims in the Texas Action pursuant to Federal Rule of Civil Procedure 25(c);

- D13's debtor-initiated counterclaims and D13's third party claims in the Texas Action (the "Debtor's Claims") are not subject to the automatic stay of § 362(a) or any other stay of this Court and may proceed to judgment on the merits;

***"Creditors's Claims": GenghisComm's and Mr. Shattil's claims against D13***

- GenghisComm's and Mr. Shattil's claims against D13 (the "Creditor's Claims") by operation of the Lift Order are not subject to the automatic stay of § 362(a) or any other stay of this Court and may proceed to judgment on the merits;

- The Creditor's Claims are not the property of the estate pursuant to § 541;

- The trustee, George L. Miller, is not the transferee of D13's interest in the Debtor's Claims and is not the exclusive representative of the estate with respect to Debtor's Claims;

- by operation of the Lift Order, the Debtor's Claims, including the pending Rule 11 motions, are not subject to the automatic stay of § 362(a) or any other stay of this Court and may proceed to judgment on the merits;

- With respect to the Debtor's Claims, the Lift Order has returned the parties in the Texas Action to the legal relationships which existed before the automatic stay became operative;

- D13, in the Texas Action with respect to the Debtor's Claims, has the authority to be represented by its counsel of record in the Texas Action and counsel of record in the Texas Action may take direction from D13's corporate representative(s);

The Lift Order remains in effect as supplemented and clarified by the Proposed Order.

## I. Factual Background

### A. The Texas Action

1. On May 11, 2022, plaintiff and patent owner GenghisComm Holdings LLC ("Genghis") filed suit against Department 13, Inc. ( "D13") in the Eastern District of Texas, Case No. 2:22-cv-142. ("Texas Action").

2. The essence of the Texas Action is that Genghis and Department 13, Inc. entered into multiple patent license agreements over many years but Department 13, Inc. never paid Genghis the minimum royalty debt explicitly set forth in those agreements.

3. Discovery in the Texas Action was extensive, expensive and closed in April 2023.

4. The Court in the Texas Action has now conducted four lengthy in-person hearings.

5. The Texas Court is extremely familiar with the issues in the Texas Action.

6. The Texas Court has extensive knowledge of the facts and issues.

7. Department 13, Inc. has had four lawyers from two different law firms represent it throughout the Texas Action.

8. Discovery in this case was extensive, expensive and closed in April 2023.

9. Six motions for summary judgment were filed and await decision.

10. The first group of summary judgment motions relate to GenghisComm's claim: Texas Action Dkt. No. 126. The second group of motions relate to both GenghisComm's claims and D13's counterclaims/3rd party claims: Texas Action Dkt. No. 119 and Dkt No. 143. The third group relates to D13's counterclaims and 3rd party claims: Texas Action Dkt. Nos. 140, 141, and 142.

11. The trustee has had the briefing on the summary judgment motions since July 2023 and full access to the litigation files in the Texas Action since September 18, 2023.

12. The trustee's counsel has also received service of the two Rule 11 motions pending in the case.

**B. The Stay of the Texas Action**

13. On June 2, 2023, the district court (the "Texas Court") in the Texas Action Texas issued an Order that "all proceedings in [the Texas Action] action are STAYED" and:

> "Plaintiff GenghisComm Holdings, LLC is directed to file within the next 30 days either (1) a motion to dismiss the claims in this action against D13 without prejudice (retaining the right to pursue such claims in the Bankruptcy Court), or (2) a motion in the Bankruptcy Court to lift the stay against D13 for the limited purpose of pursuing the claim to judgment in this Court."

14. The Debtor's claims never should have been subject to the stay.

**C. The Trustee's Adversary Proceeding**

15. On September 29, 2023, the bankruptcy trustee filed a complaint against GenghisComm and Mr. Shattil, which was amended on October 5, 2023. <u>Miller v. Shattil</u>, case Ch- 23-50591.

16. This adversary proceeding has substantial (if not complete) factual and legal overlap with the issues in the Texas Action, for which so much time and money has already been spent on fact discovery and summary judgment briefing.

17. The adversary proceedings re-alleged allegations from this case, e.g. that the TPA somehow took patent rights from D13 and gave them to GenghisComm, that Hunter lacked authority to enter the TPA and Release Agreement, that D13 received no value for entering the TPA, etc.

**D. The Bankruptcy Court Entered the Agreed Order Lifting the Stay of the Texas Action**

18. Given the expense and burden already incurred in the Texas Action, and its nearness to completion at the time of the stay, GenghisComm did not want to file a motion to dismiss the claims in this action against D13 ***without prejudice***.

19. Instead, on June 29, 2023 GenghisComm moved to lift the stay in this case to bring all of

the issues in this case back to this Court such that they should proceed to final judgment with prejudice and with preclusive effect.

20. GenghisComm and Mr. Shattil tried to resolve the motion to lift the stay by agreement with the trustee for months.

21. GenghisComm and Mr. Shattil repeatedly declined offers by the trustee to dismiss the counterclaims and 3rd party claims in the Texas Action ***without prejudice***.

22. The trustee refused to dismiss the counterclaims and 3rd party claims in the Texas Action ***with prejudice***.

23. This Court conducted multiple hearings about the motion to lift the stay.

24. On October 5, 2023, Mr. Shattil testified to this bankruptcy court, see Dkt. No. 63 at minutes 34-35) to the stress on him and hardship for his family and other damage from D13's fraud allegations and at minute 36 ("These bogus counterclaims against me are ruining my life. They are ruining my business. They are stressing my relationship with my family. They are impacting my family's lives").

25. At the October 5 hearing, trustee's counsel indicated that it had not had enough time to review the Texas Action materials and needed more time.

26. On October 5, 2023, this bankruptcy court gave the trustee an extra 50 days to decide what position it would take on the Texas Action: pursue its counterclaims and 3rd party claims or dismiss them with prejudice.

27. On November 28, 2023, the trustee agreed to lift the stay in this case. Dkt. No. 65. ("Certification of Counsel of Agreed Form of Order granting Relief from the Automatic Stay").

28. After GenghisComm and the bankruptcy trustee agreed to the language of this Order, the bankruptcy court then entered this Order on November 28, 2023, Dkt. No. 66.

### E. The Trustee's Attempt to Avoid the Preclusive Effect of the Texas Court's Judgment

29. After agreeing to lift the stay, Trustee's counsel has taken the position:

> "We do not consider anything in Texas binding on the trustee."

Ex. B.

30. Further, in response to D13's own counsel asking the trustee to substitute as the real party-in- interest in place of D13 in the Texas action, the trustee's counsel responded:

> "The trustee is not pursuing this action. The Trustee has his own action in Delaware."

Ex. C.

31. In response to further request from D13's Texas counsel, the trustee Mr. Miller responded:

> TRUSTEE WILL NOT BE SUBSTITUTED AND WILL NOT SUBMIT TO JURISDICTION IN TEXAS.

*Id*.

32. Thus, it appears that the trustee plans to allow a default judgment in this case by arguing that a default judgment cannot be afforded issue preclusion or claim preclusion.

33. Further, the trustee has declined to cooperate in bringing the Texas Action to resolution and is preventing its resolution despite agreeing to lift the stay.

34. The trustee's position removes all meaning from the agreement to lift the stay.

### F. The Texas Court's Request After Lifting the Stay

35. On November 28, 2023, in the Texas Action, GenghisComm filed a Notice that this Court had issued an Order Lifting the Stay.

36. On December 7, 2023, D13's counsel in the Texas Action moved to withdraw from that case.

37. On December 8, 2023, the Texas Court denied the motion in an Order stating:

> "Department 13, Inc. cannot represent itself. The Court will not grant such a motion to withdraw without substitution of either new counsel or the trustee."

38. Although it did not meet the Texas Court's prior Order above, on December 18, 2023, D13's counsel filed an amended motion to withdraw.

39. The Amended Motion to withdraw argued that only the trustee who "has capacity to sue and be sued" in the name of the bankruptcy estate. Ex. D, see id. at ¶ 13 ("the Attorneys believe the Trustee should be substituted for D13 as the real party-in-interest.")

40. On December 27, 2023 the Texas Court issued the Order below, which stated:

> The Court notes that the Amended Motion intermingles caselaw pertaining to prosecuting claims belonging to the debtor along with relevant law pertaining to defending the debtor. The Court is informed that the Bankruptcy Court for the District of Delaware lifted the automatic stay to allow this matter to be reduced to judgment. Presumably that was done with the consent of the debtor, whom the current movants have been representing. The Court expects movants, as well as counsel for other parties, to appear at the hearing prepared to discuss how this matter can be reduced to judgment.

41. On January 2, 2024, GenghisComm's and Steve Shattil opposed the motion to withdraw.

42. On January 2, 2024 GenghisComm's and Steve Shattil filed a Partially Unopposed Rule 25(c) and Rule 19 Motion Regarding Joining Bankruptcy Trustee. Ex. E. This motion was served on the trustee's counsel.

43. In those two documents, GenghisComm and Mr. Shattil explained:

GenghisComm's claims against D13
- With respect to GenghisComm's claims, they are not property of the estate, and the trustee is not the exclusive real party in interest.
- Because GenghisComm's claims are not property of the estate and debtor D13 is the real party in interest with respect to GenghisComm's claims, D13's lawyers should not be allowed to withdraw absent substitution, as set forth in the concurrently filed opposition to the amended motion to withdraw,

D13's counterclaims against D13 and 3rd party claims against Mr. Shattil
- The trustee is the party in interest with respect to the estate's assets including the counterclaims and third party claims in this case.
- The Texas Court Can Proceed to Resolve the Counterclaims and Third Party Claims Under Rule 25(c)
- The Trustee's Agreement to Lift the Stay, and the Bankruptcy Court's Order Arguing It Is Not a Party to the Texas Case
- In addition, by entering the agreed motion to lift the stay, the bankruptcy trustee

8

ratified this action, authorizing continuation of the action and implicitly agreeing to be bound by its result.

44. To ensure that the issues of fact and law in this case are considered actually litigated, determined by a valid and final judgment, and that the determination is essential to the judgment, GenghisComm and Mr. Shattil requested specific rulings on GenghisComm's and Mr. Shattil's pending motions for summary judgment including specific findings as set forth in the proposed order.

45. On January 9, 2024, the Texas Court conducted a hearing on the motion to withdraw.

46. At the January 9, 2024 hearing, the Texas Court "It strikes me as unusual that the trustee agreed to a motion to lift the stay but does not want to be involved in the case that has been unstayed." Ex. A p 5:4-6. D13's counsel stated: "the trustee has indicated -- or the response that we have from the trustee is that he is pursuing his own action in Delaware." The Texas Court also said: "Well, typically, then, they would not agree to lift the stay." Id. p. 5.

47. The Texas Court then stated:

> the path that seems clearest forward to me, and I'll certainly give Ms. Richards an opportunity to weigh in on this, but I want to give you one also, and that is to order that the answer counterclaim and third-party demand filed by Department 13 in this matter be stricken since their counsel is withdrawing and new counsel has declined to be enrolled by the parties who are currently in charge of the interests of Department 13, and then allow the Plaintiff to obtain a default judgment for their extent prayer in this matter. And the role of this court is just to reduce the claims to judgment, at which time it will be up to the bankruptcy court to decide, in accordance with its laws, what effect that judgment has in the overall liquidation of Department 13. And if you have something to say about that, I'd be happy to hear it.

Ex. A at 9:22-10:11.

48. At the January 9 hearing, counsel for GenghisComm and Mr. Shattil repeated its position in its opposition to D13's counsel's motion to withdraw, and motion to join the trustee, that given the millions and years that were put into the Texas Action, including full fact discovery and extensive dispositive motion briefing, as well as the extreme difficulties that these counterclaims and 3rd party claims have caused for Mr. Shattil —and given the

9

trustee's agreement to lift the stay—that the Texas Court should issue Orders on the merits that would have preclusive effect, avoiding any possibility of the waste of re-litigating the same issues in bankruptcy.

49. GenghisComm's counsel stated at Ex. A pp. 11:11-24:

> My clients, again, and Mr. Shattil, do not want a default judgment from the claims and counterclaims…all the work that this court has done [may] [] not have preclusive effect in the bankruptcy court, and so that court can bring the adversary proceeding. And that's a real problem for my client. As you can see, they've spent millions, we've spent millions. From our perspective these counterclaims and third-party claims never had any merit. Mr. Shattil has gone through hell, and so it's really an issue to say that those would be dismissed –
>
> THE COURT: Well, Ms. Richards, if that was the plan, why would they agree to lift the stay?

50. GenghisComm and Mr. Shattil asked the Texas Court to join the trustee to the Texas Action under Federal Rule of Civil Procedure 19 or 25.

51. The Texas Court stated as follows at the January 9, 2023 hearing:

> THE COURT: If this case was pending in the district of Delaware, it would be a simple matter for the district court there to require the trustee to come and participate. It's a more difficult thing here. I'm not really inclined to get into a jurisdictional battle with a bankruptcy trustee in order to accomplish what you're talking about.

Ex. A p. 14:7-12.

52. The Texas Court stated as follows at the January 9, 2023 hearing. Ex. A p. 14:13-15:16:

> MS. RICHARDS: I can understand that, Your Honor, but from our perspective the trustee should be estopped from taking the position it's taken. Having agreed to lift the stay, how can they then say, We refuse to appear and participate? They've also ratified this action. They authorized that it be continued, and they implicitly acquiesced to it being reduced to judgment.
>
> THE COURT: And if that argument is correct, why can't you make that argument to the bankruptcy court in Delaware when you go with a judgment that you'll get in this case?
>
> MS. RICHARDS: Well, Your Honor, I guess just backing up on this whole proceeding, the original debt in this case without interest was $1.95 million. They've spent $1.3 million. We've spent at least that much. I -- it's a mystery to me as to why, Your Honor. Between the four hearings here and the two or three hearings in Delaware, the amount of money that's been spent, now we're going to get a ruling from this court in which the trustee basically makes a mockery of lifting the stay

10

here, and now we're going to go to Delaware and argue about whether that had preclusive effect, and that's going on for years with this adversary proceeding accusing Mr. Shattil of fraud. He's already testified that his life has been ruined by these meritless fraud claims. We're really just trying to bring this to an end, Your Honor.

THE COURT: Well, I am, too, and what I'm proposing does bring it to an end, and it seems to me that what you're proposing just launches us into a jurisdictional fight with the trustee.

53. The Texas Court declined to join the trustee under Rule 19 or Rule 25 at the January 9, 2024 hearing without a further clarifying order from this bankruptcy court. For example, the Texas Court also stated:

THE COURT: The order goes on to provide "The court"--meaning the bankruptcy court—"shall retain jurisdiction to hear and determine all matters arising from the implementation of this order." Have you given thought to asking the bankruptcy court to direct the trustee to represent Department 13 in this court?

Ex. A p. 22:24-23:4.

54. The Texas Court also stated:

I am willing to hold off on taking action to give you an opportunity to go back to the bankruptcy court and see whether the bankruptcy court will direct the trustee to come and defend this action so that it can be decided on more than a default basis, but I don't see how that can be done otherwise.

Ex. A at 23:17-21.

55. The Texas Court also stated:

THE COURT: Well, how I will leave it is that I will hold off on this for 30 days, direct that you file a notice by that time indicating what has happened, and I will not schedule further proceedings in this case until I hear back from you. The likelihood is that if you're not able to get any action on that, that I'll proceed in the manner I've discussed. I will not at this point act on the motions to withdraw until I hear, but I think counsel knows where I'm inclined to go on that…..

THE COURT: What else do you need direction on from this court, Ms. Richards?

MS. RICHARDS: I think I understood your orders. Thank you, Your Honor.

THE COURT: All right. Mr. Jackson, Mr. Christian, Mr. Shapiro, I know you would prefer to have an immediate answer today. I just want to wait and see what the bankruptcy court will do.

Ex. A at 24:17:25:9.

## II. Argument

In the absence of a clarifying Order from this Court, the Texas Court does not appear willing to enter any Order other than a default on both the:

- Claims *by* GenghisComm against D13 for the debt under the agreement(s)
- Counterclaims *against* GenghisComm and 3rd party claims against Mr. Steve Shattil

Any Order from the Texas Court without preclusive effect would vitiate this Court's Order lifting the stay and would create additional inefficiencies in resolving the disputes between the parties, and would create additional unnecessary burden and expense for GenghisComm and Mr. Shattil.

### A. This Court Can Clarify That the Trustee Is The Plaintiff In The Texas Action As To D13's Counterclaims Against GenghisComm And Third Party Claims Against Mr. Shattil

GenghisComm and Mr. Shattil have requested that the Texas Court resolve the summary judgment motions pending there including with specific findings of fact such that it is inarguable that the Texas Action's judgments will be entitled to preclusive effect. Before it will do so, the Texas Court seeks an Order from this Court clarifying that it can proceed to resolve the counterclaims and third party claims (as well as GenghisComm's claims).

The trustee agreed to lift the stay in the Texas Action and this bankruptcy court has entered the Order lifting the stay. The bankruptcy trustee is already part of the Texas Action by virtue of its inherent role and responsibility as trustee, the lifting of the stay, and the trustee the party in interest with respect to the estate's assets including the counterclaims and third party claims in this case. See, e.g. 11 U.S.C. § 541 and 11 U.S.C. § 323.

Thus the Texas Action can proceed under Federal Rule of Civil Procedure 25(c), "Transfer of Interest," which states: "If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." *E.g. Barger v. City of Cartersville, Ga.,* 348 F.3d 1289, 1292–

93 (11th Cir. 2003) ("Although it was Barger who pursued the discrimination claims in the district court and it was she who filed this appeal, the Trustee may succeed her position from this point forward by virtue of Federal Rule of Civil Procedure 25(c). …Since the district court never directed the Trustee to substitute for Barger or join her in this suit, ***the Trustee simply takes Barger's place from hereon***."); *Norris v. Causey*, Civil Action No: 14-1598 Section: "J" (4), 30 (E.D. La. Jul. 25, 2016) ("While the trustee is the real party in interest in this case, the failure to join the trustee does not deprive this Court of subject matter jurisdiction. Rather, the Court may simply substitute the bankruptcy trustee for the Plaintiffs in this case"); *Hicks v. Citigroup, Inc.*, No. C11-1984-JCC, 2012 WL 12878689, at *1 (W.D. Wash. Oct. 16, 2012) ("Plaintiff's interest in the instant claims was transferred by operation of law under the applicable provisions of the United States Bankruptcy Code. ***No further action is required to legally transfer this interest***. Federal Rule of Civil Procedure 25(c) is merely the procedural device by which the real party in interest may be substituted as the appropriate party to a lawsuit.")

### B. The Trustee's Agreement to Lift the Stay, and the Order Lifting the Stay, Estops the Bankruptcy Trustee from Arguing It Is Not a Party to the Texas Action

The bankruptcy trustee consented to have the issues in this case decided by this Court and should be judicially estopped from opposing this motion. After D13 filed for bankruptcy on May 31, 2023, on June 29, 2023 GenghisComm moved to lift the stay in this case to bring all of the issues in this case back to this Court such that they should proceed to final judgment. The motion to lift the stay included both D13's counterclaims/ third party claims and GenghisComm's claims for royalty debt.

After trying to resolve this motion by agreement with the trustee and several Court hearings in Delaware over about 7 months, the trustee agreed to lift the stay in this case. Dkt. Nos. 65 and 66. Thus, the trustee agreed to allow the Texas Action to proceed to resolution. Any attempt by the trustee to avoid meaningful resolution of that case, with preclusive effect to prevent re-

13

litigation, would avoid the effects of its own agreement and the bankruptcy court's order. *E.g. Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 293–94 (5th Cir. 2004) (judicial estoppel "prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or earlier proceedings").

In addition, by entering the agreed motion to lift the stay, the bankruptcy trustee ratified this action, authorizing continuation of the action and implicitly agreeing to be bound by its result. E.g. *Alexander v. C.R. Bard, Inc.*, No. 3:12-CV-5187-O, 2014 WL 12602871, at *6 (N.D. Tex. Feb. 26, 2014) (discussing Rule 17(a)(3) "*Joinder of the Real Party in Interest.* The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest."). Any other interpretation would vitiate the agreement to lift the stay, and this Court's order lifting the stay, and render them more than meaningless.

### C. This Court Can Clarify That GenghisComm's and Mr. Shattil's Claims Against D13 Do Not Belong to the Estate

With respect to GenghisComm's claims against D13, they are not property of the estate, and the trustee is not the exclusive real party in interest. *E.g. In re Seven Seas Petroleum, Inc.*, 522 F.3d 575, 584 (5th Cir. 2008) ("if the cause of action does not explicitly or implicitly allege harm to the debtor, then the cause of action could not have been asserted by the debtor as of the commencement of the case, and thus is not property of the estate.") The debtor's standing does not change, the debtor (D13) retains its standing and should remain a party to this case. The trustee's joinder for GenghisComm's claims is allowed but not required. "A trustee *can* assert the general claims of creditors, but is precluded from asserting those creditor claims that are personal." *Id.* at 588 (emphasis added). GenghisComm's claims are not property of the estate and debtor D13 is

14

the real party in interest with respect to GenghisComm's claims. The Fifth Circuit has recognized the principle that "[a]n order which lifts the automatic stay returns the parties to the legal relationships which existed before the stay became operative" *Vega v. Gasper*, 36 F.3d 417, 422 (5th Cir. 1994) (citing *Matter of Winslow,* 39 B.R. 869, 871 (Bank. N.D.Ga.1984). This Court can provide the Texas Court with comfort that after the stay was lifted, GenghisComm's claims can simply proceed to judgment in the Texas Action.

**Conclusion**

GenghisComm and Mr. Shattil seek entry of an Order from this Court, substantially in the form attached hereto (the "Proposed Order"), clarifying the Lift Order such that the Texas Action can proceed to judgment.

Dated:  January 23, 2024

Respectfully submitted,

*/s/ Garvan F. McDaniel*
Garvan F. McDaniel (DE # 4167)
1311 Delaware Avenue
Wilmington, DE 19806
Telephone:  302-656-7540
Facsimile:  302-656-7599
gfmcdaniel@dkhogan.com

-and-

Alison Aubry Richards
IL Bar # 6285669
Global IP Law Group, LLC
55 West Monroe Street, Suite 3400
Chicago, IL 60603
Telephone: (312) 241-1500
Email: arichards@giplg.com

*Counsel for GenghisComm Holdings, LLC*